**In re Jerome Kenneth PERRY, Debtor.**

**No. CV–95–5594–REC.**

United States District Court,
E.D. California.

Feb. 7, 1996.

Jerry Namba, Forrest and McLaughlin, Pinedale, CA, for Forrest McLaughlin.

Thomas L. Holtz, Jr., McCormick Barstow Sheppard Wayte and Carruth, Fresno, CA, for Linda Ekstrom Stanley and Jerome Kenneth Perry.

Lawrence B. Kenkel, Wild Carter and Tipton, Fresno, CA, Brett J. Dorian, U.S. Bankruptcy Court, Fresno, CA, Carol Diane Mills, U.S. Trustee Office, Attorney Advisor, Fresno, CA, Peter Hugh Carroll, III, United States Trustee, Fresno, CA, for Linda Ekstrom Stanley.

## ORDER AFFIRMING BANKRUPTCY COURT DECISION

COYLE, Chief Judge.

On February 5, 1996, this Court heard oral argument on an appeal from an order of the Bankruptcy Court denying an application for fees. Upon consideration of the oral and written record, this Court affirms the order of the Bankruptcy Court for the reasons stated herein.

### I. *Overview*

The law firm of Forrest & McLaughlin ("F & M") appeals from an order of the Bankruptcy Court denying its application for fees. The Bankruptcy Court denied fees on the grounds that F & M's dual representation of the trustee and a general partner of an entity seeking to purchase estate assets constituted an impermissible conflict of interest. This Court affirms the Bankruptcy Court's decision. The Bankruptcy Court properly found an impermissible conflict of interest which could not be waived by the trustee. Counsel's failure to withdraw upon learning of the conflict created by its dual representation provides a proper basis for the denial of fees.

### II. *Jurisdiction*

This court has jurisdiction pursuant to 28 U.S.C. § 158(a). The decision of the Bankruptcy Court from which the appeal was taken constitutes a final resolution of the matters at issue. The notice of appeal was timely filed on January 30, 1995, seven days after Judge Dorian entered the order denying fees.

III. *Standard of Review*

■ A decision of the Bankruptcy Court regarding attorney's fees is reviewed for abuse of discretion. *Boldt v. Crake,* 945 F.2d 320, 322 (9th Cir.1991). Under this standard, the appellate court must "have a definite and firm conviction that the Bankruptcy Court committed a clear error of judgment" in order to reverse the Bankruptcy Court's decision regarding fees. *Locke v. Walsh,* 140 B.R. 260, 261 (9th Cir.1992). The Bankruptcy Court's finding of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. Neben & Starrett, Inc. v. Chartwell Financial Corp.,* 63 F.3d 877 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996).

IV. *Facts and Procedural History*

On November 10, 1992, Jerome Kenneth Perry, the debtor, filed a voluntary Chapter 11 petition for reorganization. At the time of bankruptcy, Perry owned an unimproved lot at the northeast corner of Robertson Boulevard and Chowchilla Boulevard in Chowchilla, California. In 1990, Burger King Corporation acquired an adjacent property from Perry by a grant deed which contained a covenant that Perry's unimproved lot would not contain a restaurant selling ground beef (hamburger outlet) for a period of 20 years. On November 9, 1993, Perry employed Stephen Fisher, a real estate broker, to sell his Chowchilla property. In April, 1994, Fisher secured an offer from the Crew Family Trust, Thomas Issak, and Tracy Issak (collectively, the "Crew group") to purchase the property for $191,500.

Before the sale was consummated, the case converted to a liquidation under Chapter 7. Ellen Briones was appointed the Chapter 7 trustee on February 28, 1994. As early as March 1994, Briones discussed with F & M the Chowchilla property and possible retention of the F & M firm to represent the estate in this matter. E.R. 24:11. Briones advised F & M, through Jerry Namba, that Fisher had conveyed to her the Crew group offer for the purchase of the Chowchilla property.

Briones filed an application on May 20, 1994, to employ Namba and F & M as general counsel for the purchase by the Crew group. E.R. 2:1. In the application, Namba submitted a declaration indicating that he or his firm "was not employed by or connected with the Debtors, any creditor, the United States Trustee or ... any other party in interest ... or any person having an adverse interest to the Trustee." E.R. 2:4. The Bankruptcy Court authorized Briones to employ F & M as her general counsel on May 27, 1994. The court also authorized Briones on June 7, 1994, to employ Fisher as a real estate broker to obtain the best offers available for the Chowchilla property. The pending Crew offer was not disclosed in the application to employ Fisher.

Although Jerry Namba's declaration in the record indicates that Namba was aware of the identity of the proposed purchaser on May 11, 1994, before the application was submitted to the court, he neglected to review the Crew offer until "several weeks later" or to conduct a further conflicts check with clients of F & M. E.R. 24:12–13. Indeed, Namba did not ultimately discover that F & M was already representing Thomas Issak and Tracy Issak until July 28, 1994, approximately three months later, when he was drafting the motion for sale of the Chowchilla property. E.R. 24:13. Rather than withdrawing from the case or bringing the conflict issue to the court's attention for its determination, Namba sought to retain both clients for F & M and to remedy the conflict by obtaining written waivers of conflict from Briones and Issak. E.R. 7:9.

On August 31, 1994, Briones filed a motion seeking authorization to sell the Chowchilla property to the Crew group for $191,500 free and clear of liens. E.R. 5:1. Briones disclosed that the debtor had designated a value for the Chowchilla property of $300,000 and that she had received a competing offer from Jack in the Box to purchase the property for the sum of $325,000. E.R. 6:2. Briones concluded that the proposed sale to the Crew group for $191,500 was in the best interest of the estate. She cited problems with the Jack in the Box offer because of the covenant and concluded that "litigation arising from acceptance of the Jack in the Box offer" seemed assured. If the trustee accepted the Crew

group offer, she reasoned, there would be no problem with the covenant because the Crew group was already operating the adjacent property under a franchise from the Burger King Corporation and would have been the party seeking to enforce the restrictive covenant. E.R. 6:3; 7:3.

Briones also disclosed for the first time that Issak was an existing client of F & M, and asserted that a potential conflict of interest existed. Briones advised the court that a waiver of conflict had been executed by each of the parties. E.R. 6:3–4. As to the conflict of interest, Namba filed a declaration which read:

2. This firm has represented and continues to represent Thomas and Tracy Issak in various transactional and tax matters. This firm's representation of the Issaks does not include the purchase of the property belonging to the estate ... Nor has this firm represented the Issaks in the acquisition of the lot adjacent to the estate's Chowchilla property.

3. Because of the potential conflict of interest in this firm's representation of the Trustee, on the one hand, and the Issaks, on the other hand on unrelated matters, both parties have been advised of the potential conflict and have been asked to sign waivers.

E.R. 7:9.

On September 22, 1994, the Bankruptcy Court denied Briones' motion authorizing the sale to the Crew group. The Bankruptcy Court found that F & M had a conflict of interest and that it had a duty to withdraw from representing Briones with respect to the Chowchilla property transaction upon learning of the conflict. The court concluded that F & M's conflict was prejudicial with respect to whatever advice the firm had given Briones concerning the validity and enforceability of the covenant, and ruled that the sale would not be approved until the court was satisfied that Briones had received the advice of fully independent counsel in the matter. E.R. 9:3–4, 6–7.

On October 25, 1994, Briones filed a Substitution of Attorney to replace F & M as general counsel. The court approved the substitution. On January 6, 1995, F & M filed its application for payment of final fees seeking allowance and payment of $15,672.50 in attorney fees and $40.23 in costs. E.R. 18:1. In the hearing regarding fees, Namba testified that F & M did not have a long and continuous relationship with Issak, and that F & M's brief representation of Issak concluded as of June 2, 1994. E.R. 24:14–15. The Bankruptcy Court denied the final application for payment of attorney fees on March 20, 1995. The court concluded that F & M had an impermissible conflict of interest which could not be waived by the trustee, and that F & M's failure to withdraw upon learning of the conflict may have resulted in the loss of the Jack in the Box offer by the estate. E.R. 28:3. The order denying application for fees was entered on June 23, 1995. E.R. 33:1. The Bankruptcy Court ultimately granted a motion in June 1995 to sell the Chowchilla property in question to Tesei Petroleum for $250,000 cash, and that deal was consummated shortly thereafter.

## V. *Discussion*

A. *The Bankruptcy Court was correct in finding that F & M's dual representation of Briones and Issak constituted an impermissible conflict of interest.*

■ The Bankruptcy Court did not abuse its discretion in finding that F & M's dual representation of the Chapter 7 trustee, Briones, and a potential purchaser of assets from the bankruptcy estate, Issak, constituted an impermissible conflict of interest. *See* 11 U.S.C. § 327(a).

■ To obtain the Bankruptcy Court's approval to represent the trustee, 11 U.S.C. § 327(a) requires an attorney to establish that he (1) does not hold or represent an interest adverse to the estate and (2) is a disinterested person. *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 748 (Bankr.N.D.Tex. 1988). The courts have interpreted "interest adverse to the estate" to mean:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
(2) to possess a predisposition under cir-

cumstances that render such a bias against the estate.

*In re Roberts,* 46 B.R. 815, 827 (Bankr. D.Utah 1985), *aff'd in part, modified in part,* 75 B.R. 402 (D.Utah 1987).

Notwithstanding an attorney's opinion that a connection is of no consequence or is not adverse, the bankruptcy court must decide whether an impermissible conflict of interest exists. Failure to comply with the disclosure requirement covering all connections is an independent basis for denial of fees. Fed.R.Bankr.P. 2014(a). Section 328(c) authorizes the court to deny compensation for services or reimbursement of expenses if an attorney is not a disinterested person *at any time during his employment.* 11 U.S.C. § 328(c).

In the case at bar, F & M explains that it represented the Issaks on unrelated, individual tax matters. However, F & M admits that its simultaneous representation of Briones and Issak gave rise to a potential conflict of interest. E.R. 6:3–7; 7:9. F & M admits that it obtained a waiver of conflict from Briones and a waiver of conflict from Issak in an attempt to cure such potential conflict of interest. E.R. 6:4; 7:9. F & M attempts to minimize the conflict by drawing a distinction between "potential" and "actual" conflicts of interest. F & M reasons that it did not represent an interest adverse to the estate because there was only a "potential" conflict, not an "actual" one. F & M believed that an "actual conflict would only arise if a lawsuit were to emanate in which one of the parties commenced an action against the other for breach of the Sale Agreement." Appellant's Brief at 7.

The courts have rejected any distinction between the effect of actual and potential conflicts of interest in a bankruptcy matter. *Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir.1994) (a ruling from the Bankruptcy Court should be obtained "as soon as counsel acquires even constructive knowledge reasonably suggesting an actual or potential conflict of interest"). Similarly, in the Ninth Circuit, disqualification is appropriate even when "an actual conflict of interest is not clearly established." *Chugach Elec. Ass'n v. United States District Court,* 370 F.2d 441,

442 (9th Cir.), *cert. denied,* 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1966). The Ninth Circuit granted a writ of mandamus directing the district court to set aside an order denying the petitioner's motion to disqualify trustee's counsel, finding that the trustee's attorney had previously represented an electric company and possessed a *potential conflict* in pursuing a cause of action against such company on behalf of the estate. *Id.* at 444.

In this case, it is undisputed that Issak was a general partner of the Crew group, that F & M represented Issak for some period while it was employed by the estate to evaluate the competing offers by the Crew group and Jack in the Box to purchase the Chowchilla property, and that such dual representation was not disclosed to the court until August 31, 1994. Failure to disclose the connection is, of and by itself, sufficient grounds for the disqualification of the firm and denial of fees. 11 U.S.C. §§ 328(c) and 330. Therefore, the Bankruptcy Court properly determined that F & M's dual representation of Issak and Briones was adverse to the estate in that F & M:

1) failed to promptly withdraw as general counsel for Briones upon discovery of its conflict of interest. E.R. 32:6; 28:6;

2) failed to adequately analyze or seek declaratory relief with respect to the restrictive covenant on property adjacent to the Chowchilla property. E.R. 32:7; 28:3; and

3) damaged the estate through its actions in an incalculable amount through the loss of the Jack in the Box offer of $325,000. E.R. 32:6–7; 28:3.

For all these reasons, this Court finds that the Bankruptcy Court was correct in its conclusion that an impermissible conflict of interest existed. Accordingly, the order of the Bankruptcy Court is affirmed.

B. *The Bankruptcy Court was correct in finding that the conflict of interest could not be waived.*

The Bankruptcy Court did not abuse its discretion in concluding that the conflict of interest affecting F & M was not subject to the waivers obtained by F & M from the Chapter 7 trustee and general partner of the

buyer. The bankruptcy code contains a strict requirement which mandated F & M to disclose its potential conflict of interest and to withdraw representation. Regardless of the rules of professional conduct, the bankruptcy code does not permit Briones or Issak to negate that conflict by signing a waiver. This is because the ultimate party at interest is the creditors of the bankruptcy estate.

█ As to the potential conflict of interest, F & M points to Rule 3–310 of the California Rules of Professional Conduct and argues that "its disclosure made to and waivers obtained from its client and former client negated any material conflict." Appellant's Brief at 12. However, section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct. The court in *In re Amdura*, 121 B.R. 862, 866 (Bankr.D.Colo.1990) discussed the interplay between section 327(a) and rules of professional conduct and concluded that "the activities and multiple representation that may be acceptable in commercial settings, particularly with the informed consent of clients, may not be acceptable in bankruptcy ... when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at, perhaps, the expense of another." *Id.* The *Amdura* court concluded that section 327 does not permit a waiver or the trustee's consent to representation of dual interests to excuse the protection of the bankruptcy estate. *Id.*

F & M has failed to recognize this strict limitation of section 327 in its argument that the waiver was valid. In its brief, F & M distances itself from the bankruptcy estate and minimizes its role as Briones' counsel in the sale of the Chowchilla property to the Crew group. However, as the Bankruptcy Court correctly found, F & M's simultaneous representation of Briones and Issak clearly restrained F & M from effectively discharging its duty to zealously represent Briones and obtain the maximum benefit for the estate through the liquidation of the Chowchilla property. E.R. 32:6–7. By its own admission, F & M did not investigate the enforceability of the restrictive covenant, did not

assess the relative merits of the Crew group and Jack in the Box offers and did not attempt to secure more favorable terms from either prospective purchaser for the estate. Appellant's Brief at 14. Without investigating the enforceability of the covenant, F & M used the mere existence of that covenant to justify accepting a substantially lower offer for the sale of the Chowchilla property to the Crew group. This was against the interest of the bankruptcy estate because it was the Crew group which operated the adjacent property and who would have sought to enforce the covenant. E.R. 32:4–3.

The conflict of interest occurred when F & M pursued approval of the Crew group offer without determining that such course of action complied with the Code and served the best interests of the estate. The Bankruptcy Court correctly noted at the hearing of March 20, 1994 that:

as soon as that Jack in the Box offer came in that there should have been prompt, aggressive action to try to accommodate that offer, an additional $130,000. And instead, all the effort seemed to be directed at finding ways to avoid that offer

.    .    .    .    .

As soon as that covenant came up, the only course of action was to either negotiate, to have it clearly determined that the covenant was of no legal effect, or to have started litigation on it. And especially once you became aware that there was a conflict, your only course of action at that point should have been to withdraw, because anything you did after that point, especially where there was this issue of the covenant, is going to color everything that happens.

E.R. 28:5–6.

F & M was mistaken it its belief that it could cure the conflict of interest through waivers from Briones and Issak. Informed consent could not be obtained because, as the court correctly observed, "the real parties in interest in this case are the creditors, and that is not a waivable conflict." E.R. 22:3. The creditors suffered when Briones failed to accept the Jack in the Box offer to purchase the property at a higher price. In view of

the strict requirements of section 327(a), the Bankruptcy Court correctly found that the waiver obtained by F & M from Briones was ineffective and could not serve to negate F & M's conflict of interest. Accordingly, this Court affirms the Bankruptcy Court on these grounds as well.

C. *The Bankruptcy Court was correct in finding that F & M's failure to withdraw upon learning of the conflict may have caused damage to the bankruptcy estate.*

■ It was not abuse of discretion for the Bankruptcy Court to find that F & M may have caused damage to the bankruptcy estate by its failure to immediately withdraw as counsel for the Chapter 7 trustee upon learning of the conflict of interest. A showing of actual damage is not a prerequisite to denial of compensation. F & M's failure to abide by the disclosure and withdrawal requirement is enough to disqualify the firm and an adequate basis for the court to deny compensation, regardless of whether the undisclosed connection is material or *de minimus.*

■ F & M reasons that any damage caused to the estate by its failure to withdraw and the loss of the Jack in the Box offer was "substantially mitigated by the subsequent sale to Tesei Petroleum." Appellant's Brief at 17. F & M reasons that the $325,000 Jack in the Box offer contained so many contingencies that the $250,000 offer from Tesei was substantially equivalent. However, actual damage to an estate is not a prerequisite to denial of compensation for violation of the strict requirements of section 327(a). Section 328(c) authorizes the court to deny allowance of compensation for services or reimbursement of expenses if *at any time during his employment* the attorney is not a disinterested person. Failure to abide by the disclosure requirement is enough to disqualify an attorney and deny compensation, regardless of whether the undisclosed connection is material or *de minimis. See In re Occidental Fin. Group, Inc.,* 40 F.3d 1059, 1063 (9th Cir.1994).

In the case at bar, F & M was not a disinterested person when it failed to pursue vigorously the Jack in the Box offer. It failed to act in the best interest of the estate.

It was not necessary for the Bankruptcy Court to find that F & M's simultaneous representation of Briones and Issak resulted in affirmative damages to the bankruptcy estate. F & M's fees were denied based upon a finding that F & M represented an interest adverse to the estate and that the services F & M provided resulted in no benefit to the estate. Accordingly, the Bankruptcy Court had proper grounds to deny the fee application and did not abuse its discretion. Therefore, this Court affirms the order of the Bankruptcy Court in its entirety.

VI. *Conclusion*

The Bankruptcy Court properly exercised its discretion and denied fees to the trustee's former counsel. The Bankruptcy Court appropriately concluded that F & M's dual representation of the trustee and a general partner of an entity seeking to purchase estate assets constituted an impermissible conflict of interest. Furthermore, the Bankruptcy Court correctly concluded that the parties could not waive the conflict of interest. The court properly concluded that counsel's failure to withdraw upon learning of the conflict created by its dual representation may have damaged the bankruptcy estate. Therefore, this Court concludes that the Bankruptcy Court did not abuse its discretion and affirms the Bankruptcy Court's decision to deny the fees requested by F & M.