### In re WHEATFIELD BUSINESS PARK LLC, Debtor.

### Nos. LA 02–21691–SB, LA 02–21693–SB, LA 02–22988–SB.

United States Bankruptcy Court, C.D. California.

Nov. 22, 2002.

Michael H. Weiss, Berkowitz, Black & Zolke, Beverly Hills, CA, for debtor.

John A. Graham, Bethann R. Young, Jeffer, Mangels, Butler & Marmaro, Los Angeles, CA, for The Capital Company of America LLC.

Russell Clemeson, Assistant United States Trustee.

## First Amended Opinion on Notice re Conflicts of Interest in Employment of Counsel

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

The three debtors in these administratively consolidated cases have moved for the appointment of Berkowitz, Black & Zolke and its predecessor Weiss & Spees, LLP (collectively "BBZ") as counsel for each of them. Because employment in all three cases poses several potential conflicts of interest, consent of the relevant parties must be obtained. For a debtor in a bankruptcy case, which is presumptively insolvent, such consent must be obtained from the creditors. The court finds that, despite the lack of explicit provision in

§ 327(a) [1] authorizing consent to the representation of potentially conflicting interests resulting from the representation of related chapter 11 debtors, such consent can be effectively given in appropriate circumstances. Actual conflicts of interest, in contrast, cannot be authorized. The court further finds that the failure to object, after appropriate notice and opportunity to be heard, constitutes consent to the employment under § 327.

The court holds that consent of the creditors is given if the creditors do not object after they are given notice and an opportunity to be heard. However, in these cases the court lacks evidence that sufficient notice of the application, including notice of possible conflicts of interest, has been given to the creditors. Accordingly, the court cannot act on the employment application until it receives evidence that such notice has been given.

## II. RELEVANT FACTS

Wheatfield Business Park, LLC ("Wheatfield"), Hebron Business Park, LLC ("Hebron"), and Poughkeepsie Business Park, LLC ("Poughkeepsie") are chapter 11 debtors in these procedurally consolidated cases. The sole asset of each debtor is a warehouse and light industrial business complex. Wheatfield's property is located in Wheatfield, New York (near Buffalo). Poughkeepsie's property is located in Poughkeepsie, New York. Hebron's property is located in Hebron, Ohio, some 30 miles east of Columbus. Each debtor is a limited liability corporation, and is part of a business group that includes collective parent business entities and numerous other entities that are not in bankruptcy. The managing member of each debtor is Industrial Realty Group,

Inc. ("IRG"), which also owns one percent of each debtor.

In addition to collective business parents, the debtors have also engaged in business transactions between themselves that raise potential conflicts of interest. It remains to be determined whether these transactions must be investigated as part of the bankruptcy process.

The relationship between Capital Corporation of America ("CCA") and these debtors arose from a common plan to acquire and develop the properties involved in these cases as well as other properties. The business plan of Stuart Lichter, the principal behind these debtors and a number of other business entities, was to acquire distressed commercial properties with substantial vacancies, to rehabilitate the properties, and to lease them to new tenants. To finance the acquisitions, Lichter obtained a credit line from CCA's predecessor, which was amended from time to time. The general terms were that CCA would fund up to 100% of the purchase price of any single property, provided that its overall lending exposure was limited to 85% of the collective value of the properties. The parties contemplated that each property would be owned by a separate business entity, and a portion of the overall outstanding loan would be allocated to each. There was no requirement that each property would have at least 15% excess value—only that the entire enterprise would meet this test. The loans were cross-collateralized by the various entities to protect CCA's interest in this overall ratio.

Pursuant to this plan, Lichter acquired approximately a dozen properties and proceeded to develop them. The debt was

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 2002) and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036 (West 2002).

refinanced and reallocated among the various business entities several times during the course of the business. In due course, most of the properties were refinanced separately or sold, and the CCA indebtedness was paid down. Eventually, only the three properties remained that are involved in these chapter 11 cases. However, because of the recent downturn in the economy and in industrial property values, the overall 15% equity cushion has eroded.

IRG retained BBZ on behalf of the debtors, and agreed that IRG would guaranty the debtors' legal fees and costs. The retention agreement did not purport to create an attorney-client relationship between IRG and BBZ. In addition, IRG acknowledged the possibility that its interests may be adverse to the debtors and agreed to retain separate counsel as to any such matters. Each debtor has given its consent to the joint representation in this case.

Each debtor has applied for the appointment of BBZ as its counsel in each of the three cases. The applications include a disclosure of potential conflicts of interest. BBZ also discloses that IRG paid the firm a retainer of $25,830 on behalf of each debtor.

BBZ has given separate notice to the creditors in each case that it seeks employment in that case. However, there is no evidence that the creditors have been given notice of any of the potential conflicts of interest that have emerged. Indeed, there is no evidence before the court that the creditors have even been notified that the other related debtors have applied for the appointment of BBZ in their cases as well.

CCA objected to debtors' motion to employ BBZ. However, pursuant to a settlement between the debtors and CCA, it has withdrawn its objections.

## III. DISCUSSION

### A. Governing Law

The employment of counsel in a bankruptcy case is governed by § 327, Rule 2014, and the applicable rules of professional conduct.

The legal regime governing bankruptcy cases is a mixture of federal and state law. Federal bankruptcy law determines some rights of the parties. Where bankruptcy law does not govern, the underlying non-bankruptcy law (usually state law) determines the rights of the parties. *See, e.g., In re Plitt Amusement Co. of Washington, Inc.*, 233 B.R. 837, 840–41 (Bankr.C.D.Cal. 1999); *cf. Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (holding that property interests are created and defined by state law; unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding).

### 1. Section 327(a)

Section 327(a) specifies the qualification standards for professionals, including attorneys, who are employed in a bankruptcy case. This statute provides:

> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 327 is rooted in the "congressional intention to hold professionals performing duties for the estate to strict fiduciary standards." *See, e.g., In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016 (Bankr.N.D.Ill.1993). The section's main policy objective is to assure that a profes-

sional employed in the case will devote undivided loyalty to the client. *See In re Lee,* 94 B.R. 172, 178 (Bankr.C.D.Cal. 1988). "Conflicting loyalties produce inadequate representation, which threatens the interests of both the debtor and the creditors, and compromises the ability of the court to mete out justice in the case." *Id.* Furthermore, "what may be acceptable in a commercial setting, where all of the entities are solvent and creditors are being paid, is not acceptable when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at ... the expense of another." *Envirodyne,* 150 B.R. at 1018; *see also In re Amdura Corp.,* 121 B.R. 862, 866 (Bankr.D.Colo. 1990). Debtor's counsel must be able to act in the best interests of the bankruptcy estate, free of any prior or ongoing commitments. *Envirodyne,* 150 B.R. at 1018. "Because of these limitations, a chapter 11 debtor does not have an absolute right to counsel of its choice." *Id.*

■ Although the language of § 327(a) refers only to professionals employed by a trustee, the section also applies to professionals employed by a chapter 11 debtor in possession[2] pursuant to § 1107(a), which provides in relevant part, "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." *See, e.g., In re Diamond Mortgage Corp.,* 135 B.R. 78, 88 (Bankr.N.D.Ill.1990) (stating that § 327(a) applies to professionals retained by a chapter 11 debtor in possession).

■ Section 327(a) imposes a two-pronged test for the employment of professionals. The professional (1) must not hold or represent any interest adverse to

the estate, and (2) must be a "disinterested person." *See, e.g., In re Granite Partners, L.P.,* 219 B.R. 22, 32 (Bankr.S.D.N.Y.1998) (interpreting § 327(a) to impose these two express requirements); *In re Perry,* 194 B.R. 875, 878 (E.D.Cal.1996) (same); *In re Lee,* 94 B.R. 172, 177 (Bankr.C.D.Cal.1988) (same). *But see In re Martin,* 817 F.2d 175, 180 (1st Cir.1987) (construing the twin requirements of 327(a) to "telescope into what amounts to a single hallmark"). This standard is high: "If there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification." *Lee,* 94 B.R. at 177.

■ Where a bankruptcy debtor is a creditor of a related debtor, it is presumptively improper for the same attorney (or law firm) to be general counsel for the related debtors. *See, e.g., In re Interwest Bus. Equip.,* 23 F.3d 311, 316 (10th Cir. 1994) (stating that separate counsel is required where intercompany debts placed each estate in a creditor/debtor relationship with another); *Lee,* 94 B.R. at 177 (stating that, absent appropriate consent, a law firm may not represent both a corporation and its sole shareholder in related chapter 11 cases); *Gill v. Sierra Pacific Construction (In re Parkway Calabasas, Ltd.),* 89 B.R. 832, 835 (Bankr.C.D.Cal. 1988) (adopting a presumption that the same counsel should not be appointed for related chapter 11 debtors where creditors have dealt with the debtors as an economic unit), *rev'd on other grounds,* Bankr.9th Cir.1990 (unpublished opinion), *rev'd,* 949 F.2d 1058 (9th Cir.1991)(adopting bankruptcy court opinion).

### 2. Federal Rule of Bankruptcy Procedure 2014

Rule 2014 of the Federal Rules of Bankruptcy Procedure sets forth the application

---

**2.** Professionals appointed to represent or assist a committee of creditors are governed by

§ 1103, which has different standards from § 327(a).

procedure for the employment of professionals. Rule 2014 requires an application to disclose, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditor, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." *Id.* at 2014(a). Furthermore, the application must be supplemented by a verified statement of the prospective professional that makes these disclosures. *Id.*

■ To make the determinations required under § 327(a), the court must be fully informed of any actual and potential conflicts of interest. The purpose of Rule 2014 is to assure that both the court and the parties in interest receive full disclosure of all actual or potential conflicts that might affect the professional's representation of a trustee, committee or debtor in possession. *See, e.g., In re Lee Way Holding Co.,* 100 B.R. 950, 955 (Bankr.S.D.Ohio 1989).

■ To obtain this information, the court principally relies on the employment application of the professional. *See Envirodyne,* 150 B.R. at 1020–21. Rule 2014 requires the applicant to disclose affirmatively all actual and potential conflicts of interest that may be relevant to determining whether the applicant meets the statutory requirements. *See, e.g., In re Cleveland Trinidad Paving Co.,* 218 B.R. 385, 387–88 (Bankr.N.D.Ohio 1998) (stating that the applicant has a duty to disclose all

facts relevant to determining counsel's eligibility for employment); *Granite Partners,* 219 B.R. at 35 (stating that proper disclosure permits the court to decide whether retention of the applicant should be approved); *Diamond Mortgage,* 135 B.R. at 97 (holding that disclosure allows the court to determine whether the professional has a conflict of interest). The obligation to make full disclosure rests on the "fiduciary obligation that an attorney ultimately employed in a bankruptcy proceeding owes to the Court." *Lee Holding,* 100 B.R. at 956.

In addition to receiving information from the applicant, the court relies on other parties in interest to bring disqualifying conflicts of interest to the court's attention. For this reason, Local Rule 2014–1 requires the applicant to provide a disclosure notice to the debtor, the United States Trustee, the principal secured creditors, the creditors' committee, and all others who request special notice.

### 3. Rule 3–310 of California Rules of Professional Conduct

In addition to the requirements of § 327(a) and Rule 2014, the conduct of lawyers is governed by the applicable state rules of professional conduct.[3] *See, e.g., Wilson v. Cumis Ins. Soc. (In re Wilson),* 250 B.R. 686, 689 (Bankr.E.D.Ark.2000) (stating that the Texas lawyers in the case were subject to the rules of professional responsibility in Texas (because they were licensed there) and in Arkansas (pursuant to the local rules of the forum district));

---

**3.** *See* Local Bankruptcy Rule 2090–1, incorporating by reference Local District Court Rule 83–3.1.2, which provides:

In order to maintain the effective administration of justice and the integrity of the Court, each attorney shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional

Conduct of California, and the decisions of any court applicable thereto. These statutes, rules and decisions are hereby adopted as the standards of professional conduct, and any breach or violation thereof may be the basis for the imposition of discipline. The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance.

*In re Jaeger,* 213 B.R. 578, 583 (Bankr. C.D.Cal.1997) (applying California professional conduct rules pursuant to local rule of court); *Value Property Trust v. Zim Co. (In re Mortgage & Realty Trust),* 195 B.R. 740 (Bankr.C.D.Cal.1996) (applying rules of professional conduct of several states to lawyers in international law firm with offices in numerous states); *Captran Creditors Trust v. North Am. Title Ins. Agency (In re Captran Creditors Trust),* 104 B.R. 442, 444 (Bankr.M.D.Fla.1989) (citing local rule adopting the Florida rules of professional conduct); *In re Lee,* 94 B.R. 172, 177–78 (Bankr.C.D.Cal.1988) (stating that the representation of conflicting interests is prohibited by the California Rules of Professional Conduct).

■ In California, Rule 3–310 of the California Rules of Professional Conduct prohibit counsel from representing adverse interests unless the client gives informed written consent.[4] Consent is required both for the representation of actual conflicting interests and potential conflicts of interest. *See In re Jaeger,* 213 B.R. 578, 585 (Bankr.C.D.Cal.1997) (stating that a second written waiver is required when a potential conflict of interest ripens into an actual conflict).

## B. Actual and Potential Conflicts of Interest

■ Neither § 327 nor Rule 2014 defines what constitutes a conflict of interest

for an attorney. Accordingly, we turn to California law to determine this issue.

Conflict of interest law has traditionally distinguished between actual and potential conflicts of interest. However, there is no definitive formulation of this distinction. *See* discussion in *In re McKinney Ranch Assocs.,* 62 B.R. 249, 253–54 (Bankr. C.D.Cal.1986). The ABA Model Rules or Professional Conduct ("ABA Model Rules"), which are in force in most states (but not California), for example, define an actual conflict of interest as one that is "directly adverse" to another client or that is "materially limited" by the representation of another client. *See* ABA Model Rules R. 1.7. As in *McKinney,* in this case the court will not be required to determine the exact line between potential and actual conflicts of interest.

Potential conflicts of interest come in enormously varying degrees. Some are quite likely to ripen into actual conflicts of interest. The likelihood of the development of other potential conflicts into actual conflicts may be very remote. Indeed, any lawyer with at least two clients has at least a remote potential conflict of interest: those two clients may somehow develop a conflict, and the lawyer could then represent conflicting interests.

■ Section 327(a) prohibits an attorney (or other professional) from represent-

---

4. Rule 3–310 provides in relevant part:
    (A) For the purposes of this rule:
        (1) "Disclosure" means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;
        (2) "Informed written consent" means the client's or former client's written agreement to the representation following written disclosure.
    (B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:

    (1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter . . . .
    (C) A member shall not, without the informed written consent of each client:
        (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
        (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict.

ing a debtor in a chapter 11 case if the attorney has or represents an *actual* conflicting interest. This prohibition is absolute, and is not subject to waiver or consent. *See, e.g., Envirodyne,* 150 B.R. at 1016; *Diamond Mortgage,* 135 B.R. at 90; *Amdura,* 121 B.R. at 866; *In re O'Connor,* 52 B.R. 892, 897 (Bankr.W.D.Okla.1985).

■ In addition, § 327 also prohibits an attorney from holding or representing a certain level of *potential* conflicts of interest. Employment may not be approved where a potential conflict creates a meaningful incentive to act contrary to the best interests of the estate and its various creditors. *See, e.g., Granite Partners,* 219 B.R. at 33.

■ Thus an actual conflict of interest creates a violation of § 327. A potential conflict of interest may also require the disqualification of a professional if, in the judgment of the court, the conflict is sufficiently important and there is a sufficient likelihood that it will ripen into an actual conflict. *See, e.g., In re Amdura,* 121 B.R. 862, 865–68 (Bankr.D.Colo.1990) (potential conflict required disqualification because any viable chapter 11 plan would require bringing litigation against a bank that provided a substantial portion of the revenue of the law firm applying for appointment as counsel for debtor). However, as the First Circuit states in *Martin,* "[t]he naked existence of a potential for conflict of interest" does not prohibit employment under § 327(a). 817 F.2d at 182. "It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant ... disqualification ...." *Id.*

## C. Appearance of Impropriety

■ A number of reported cases also state that an attorney may not be employed under § 327 if such employment would create "the appearance of impropriety." *See, e.g., Martin,* 817 F.2d at 180–81; *In re Filene's Basement, Inc.,* 239 B.R. 850, 857 (Bankr.D.Mass.1999); *Granite Partners,* 219 B.R. at 34; *Diamond Mortgage,* 135 B.R. at 91.

Except for the states where attorney conduct is still governed by the ABA Model Code of Professional Responsibility (which the ABA Model Rules replaced in 1983), United States lawyers are no longer subject to a rule requiring them to avoid conduct that creates the appearance of impropriety.[5] In fact, California never adopted such a rule.

It appears that most, if not all, cases incorporating the "appearance of impropriety" standard into § 327 either arose in states that had not yet adopted the ABA Model Rules (which abolished this provision), or were based on prior precedent of that vintage. Furthermore, it appears that the "appearance of impropriety" standard has not been applied in any reported cases to non-attorney professionals.

In this court's view, the "appearance of impropriety" standard was never a requirement of § 327 itself. Instead, it was imported into the requirements of § 327 for attorneys from state rules of professional conduct, and was applied in those states where these rules included an "appearance of impropriety" prohibition. Where this rule has now disappeared, and in states such as California where the rule never existed, the court finds that § 327 does not impose such a requirement.

**5.** The following states have not adopted the ABA Model Rules, and still have rules governing attorney conduct based on the ABA Model Code of Professional Responsibility, and still impose a duty on lawyers to avoid the appearance of impropriety: Iowa, Nebraska, New York, Ohio and Oregon.

## D. Application to Facts of These Cases

These three related cases are rife with potential conflicts of interest. The potential conflicts of interest among the debtors create the potential for counsel to represent conflicting interests.

While the appointment of the same counsel in related chapter 11 cases is presumptively improper, prospective counsel may seek to rebut the presumption at a hearing on notice to all creditors in each of the related cases. *See Lee,* 94 B.R. at 180. The notice must be sufficient to inform all creditors that the appointment may result in conflicts of interest and lack of adequate representation of the interests of the respective bodies of creditors. *See id.*

The main potential conflict of interest in these cases arises from the fact that CCA is the secured creditor in first position for each debtor, and each of the loans is cross-collateralized, at least to a certain degree, by a second mortgage on the property belonging to each of the other debtors. Thus each debtor is a potential creditor of the other debtors, and would become an actual creditor if the second mortgagee pays part or all of the debt owing principally by another debtor.

The degree of cross-collateralization differs from one debtor to the next. For Wheatfield, the second mortgage is limited to $150,000 in principal. For Poughkeepsie, the second mortgage is limited to $1,029,898. For Hebron, in contrast, the second mortgage is unlimited in amount.

Because of the limitations on the second mortgages in the Wheatfield and Poughkeepsie cases, it appears that both of their properties have equity for the owners. In contrast, the Hebron property is deeply under water as to the first mortgage alone,

and the unlimited second is entirely unsupported by value in the property.

There are two additional inter-debtor transactions that remain in consequence of the common development plan. First, there are documents that indicate that Poughkeepsie owed $1,833,013 to Wheatfield before the bankruptcy filing, but a few days before the filing Wheatfield sold the loan to Bicycle Partners, another Lichter entity.[6] Second, Poughkeepsie owes an unsecured debt of $80,000 to Wheatfield.

## E. Consent to Representation of Conflicting Interests

Professional responsibility rules traditionally have permitted clients to waive conflicts of interest of their lawyers. We turn now to an examination of whether such waiver or consent is permitted under § 327.

### 1. Consent May be Permitted in Appropriate Cases

Rule 3–310 of the California Rules of Professional Conduct authorizes a lawyer to represent more than one client with potential or actual conflicting interests, or to represent a client in a separate matter whose interest in the first matter is adverse to the client in the first matter. *See id.* at 3–310(c). Such representation requires the informed written consent of each client after full written disclosure to the affected clients of the relevant circumstances and the reasonably foreseeable adverse consequences thereof. *See id.* at 3–310(a); *see also* ABA Model Rules R. 1.7 (2002) (requiring client consent after full disclosure for the representation of conflicting interests). In addition, Rule 3–310(b) permits a lawyer to represent a client after similar written disclosure (but

---

**6.** It is uncertain whether there is any economic reality to this apparent indebtedness, and

Poughkeepsie has commenced litigation to avoid the lien.

without requiring client consent) where the lawyer has or had certain connections with other parties, witnesses, or the subject matter of the representation.

There is an important difference between the requirements of Rule 3–310 and the apparent requirements of § 327(a). Rule 3–310(c) permits a client to consent to the prohibited conflicts of interest, and Rule 3–310(b) presumes consent upon the written disclosure of a conflict covered by that provision. The ABA Model Rules have similar consent provisions. *See* ABA Model Rules R. 1.7(b)(4) (2002). Section 327(a), in contrast, has no explicit provision for waiver or consent to the representation of conflicting interests.

At the same time, there is nothing in § 327, or any other bankruptcy law provision, to indicate that the foregoing rules, authorizing consent to the representation of conflicting interests, do not apply to attorneys appointed under § 327(a).

■ The court finds that, in certain circumstances, a waiver [7] of a potential conflict of interest may be given for employment subject to the standards of § 327. While the policy of § 327(a) requires that a professional give undivided loyalty to the client, this policy is waivable in appropriate cases if the parties in interest so desire. Indeed, the number of related cases may be so large that an inflexible rule would be totally unworkable. *See, e.g., In re Cardinal Industries*, 105 B.R. 834 (Bankr.S.D.Ohio 1989) (involving a business empire of more than 1000 related entities, approximately half of which filed chapter 11 cases in Columbus, Ohio).

■ The presumption, articulated in *Parkway Calabasas*, against the appointment of a single attorney or law firm to represent related entities that have filed chapter 11 cases is rebuttable. Whether such joint representation is appropriate turns on the facts of the particular cases at issue. *See Interwest*, 23 F.3d at 318–19. In some cases, the protection of creditors may require separate representation. In other cases, joint representation may be in the best interests of the creditors.

■ However, waiver or consent to the representation of potential conflicting interests is not available under § 327 to the same degree as in non-bankruptcy cases. The higher standards applicable to professionals in bankruptcy cases require the court to make a more careful inquiry than is required outside of bankruptcy. Furthermore, courts must consider the disqualification issue under § 327 on a case by case basis. *See, e.g., In re Martin*, 817 F.2d 175, 182 (1st Cir.1987); *Envirodyne*, 150 B.R. at 1017; *Lee*, 94 B.R. at 180.

As explained *supra*, if there is an actual conflict of interest, joint representation of related debtors cannot be authorized. However, a potential conflict may be avoided in some cases by the appointment of special counsel to handle the issues involving the conflict of interest. For example, if a potential conflict of interest arises because of a transaction between two affiliated business entities that are both debtors in chapter 11 cases, the appointment of special counsel to deal with that transaction may be sufficient to permit a single attorney or law firm to represent the related entities as their general chapter 11 counsel. Alternatively, responsibility for analyzing such a transaction and perhaps litigating with respect to it may be given to

---

**7.** The court's ruling in this case does not suggest that other provisions of the Bankruptcy Code are also subject to waiver. The vast majority of the provisions of this law are mandatory, in this court's view, and not subject to waiver.

counsel for the creditors committee, if such a committee is active in the case.[8]

■ Before the court makes such a decision, the creditors must be notified and given an opportunity to be heard. The notice must be sufficient to provide adequate information to the creditors of the proposed joint representation and the known potential conflicts of interest. *See Lee*, 94 B.R. at 180.

## 2. Who May Consent

■ The more difficult issue is determining whose consent must be obtained to authorize the representation of conflicting interests. Because a debtor in bankruptcy is presumptively insolvent, the residual stakeholders are presumptively the creditors rather than the shareholders. *See Value Property Trust v. Zim Co. (In re Mortgage & Realty Trust)*, 195 B.R. 740, 750 (Bankr.C.D.Cal.1996).

*Lee* illustrates the requirements of providing disclosure and obtaining consent waivers from the appropriate parties. *Lee* involved bankruptcy cases filed by both a corporation and by its sole shareholder. Both debtors applied for appointment of the same law firm as general counsel, but failed to disclose the proposed joint representation. When the court brought this problem to counsel's attention, counsel stated that his representation of each debtor did not represent conflicting interests because the corporation was not a creditor of the shareholder and the shareholder was willing to waive any claims he had against the corporation.

The court in *Lee* first held that a shareholder cannot unilaterally waive its claims against a corporation after the filing of the

shareholder's bankruptcy case. *Lee*, 94 B.R. at 178. Second, *Lee* holds that where there is a potential conflict of interest, consent or waiver is necessary. *Lee* states, "[a]n attorney who desires to represent a debtor in possession and a conflicting interest must obtain a written waiver from the debtor, all creditors, and the United States Trustee." *Id.* at 179. However, the court retains discretion to determine whether such a waiver is sufficient to cure a potential conflict of interest, even if all the parties have consented. *Id.*

One of the most carefully reasoned cases on attorney conflicts of interest is *In re Perry*, 194 B.R. 875 (E.D.Cal.1996), where the district court found no abuse of discretion in the bankruptcy court's denial of fees to counsel for a chapter 7 trustee who also represented on unrelated matters a prospective purchaser of estate property. The district court in *Perry* affirmed the bankruptcy court's finding that the trustee's counsel had an actual conflict of interest resulting from the simultaneous representation of both the trustee and the prospective purchaser, which was only belatedly disclosed. *See id.* at 879. Furthermore, as a result of the conflict, counsel had failed to pursue vigorously a much higher offer received from another prospective purchaser and failed to take other action to facilitate the acceptance of the higher offer. *See id.* at 879–81.

The failure to make timely disclosure of the conflict, the court found in *Perry*, was alone a sufficient basis for the denial of fees. *See id.* at 879. The court in *Perry* also found that, notwithstanding the rules of professional conduct, § 327 does not permit a chapter 11 debtor to waive a conflict by signing a waiver, because the

---

**8.** *See, e.g., Official Unsecured Creditors Comm. v. U.S. Nat'l Bank (In re Sufolla, Inc.)*, 2 F.3d 977, 979 n. 1 (9th Cir.1993) (stating that § 1103(c)(5) contains a qualified implied authorization for a creditors' committee to initiate an adversary proceeding on behalf of a bankruptcy estate).

ultimate parties in interest are the creditors of the bankruptcy estate.[9]  *See id.*

### 3.  How to Obtain Consent

The courts in both *Perry* and *Lee* did not reach the issue of how the creditors can waive a conflict of interest that would otherwise disqualify debtor's counsel. This court must now address this issue.

BBZ has obtained consents from each of the debtors in the related cases before the court.  The United States Trustee has also given her consent, on condition that special counsel be employed to litigate any interdebtor claims.  However, these consents are not sufficient, because the creditors are not included.

Bankruptcy has a distinctive system for obtaining the consent of creditors for a variety of actions to be taken in the case. The standard procedure is to give notice to creditors of a proposed course of action, and to give them an opportunity to object. This procedure is generally provided by § 102(1), which provides:

In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest . . . .

Under this provision, action can be taken on behalf of the estate (and in other situations, also) after giving the appropriate notice.[10]  While the court may require a hearing, the court may also authorize the action in question without a hearing if no objection is made.

Because bankruptcy law is federal law, the bankruptcy law procedure applies in this case, rather than California procedure. Pursuant to the Supremacy Clause of the United States Constitution,[11] the bankruptcy law procedure preempts the California law procedure.

▇▇▇▇  Notice to all creditors may be required in a particular case for an application to represent related chapter 11 debtors.  In other cases, notice to the committee of creditors (or the twenty largest unsecured creditors, in the absence of a committee), the principal creditors, and other creditors who have requested special notice may be sufficient.  In determining who should receive such notice, the court must consider the size of the creditor body, the nature of the potential conflicts at issue, and any other relevant circumstances.

---

9.  The heading to this section in *Perry* overstates the law when it states, "The Bankruptcy Court was correct in finding that the conflict of interest could not be waived."  *See id.* at 879.  In fact, the text of the court's decision takes a more modest position: the chapter 11 debtor cannot waive a conflict of interest because the ultimate parties in interest are the creditors.

10.  Local Bankruptcy Rule 9013–1(g) implements § 102(1) by specifying 15 types of actions (none of which is relevant here) that can

be taken with notice where no hearing is required absent opposition.

11.  Article VI of the United States Constitution provides in relevant part:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

In this case the number of creditors in each case is relatively small, so that there is no substantial burden in giving the appropriate notice to all creditors. In addition, the potential conflicts of interest are sufficiently weighty that all creditors should receive effective notice.

## IV. CONCLUSION

The court concludes that the debtors can obtain consent of the creditors for the representation of related chapter 11 entities, such as those before the court, by giving the creditors notice that makes full disclosure of the proposed joint representation and the known potential conflicts of interest. If a creditor fails to object to the representation, the creditor thereby waives the application of § 327(a) and any right to object, and consents to the representation. If creditor consent is obtained by this process, the court will be in position to determine whether the joint representation in this case should be authorized.

Because the court has not received evidence that full disclosure has been given to creditors in these procedurally consolidated cases, approval of the joint employment must await such evidence.