# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

04-6083NE

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Big Mac Marine, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| William L. Needler, | * | |
| | * | Appeal from the United States |
| Claimant-Appellant, | * | Bankruptcy Court for the |
| | * | District of Nebraska |
| v. | * | |
| | * | |
| Charles E. Rendlen, III; | * | |
| | * | |
| U.S. Trustee - Appellee | * | |
| | * | |
| Pinnacle Bank, | * | |
| | * | |
| Creditor-Appellee. | * | |

_____

Submitted: June 1, 2005
Filed: June 20, 2005

_____

Before KRESSEL, Chief Judge, DREHER, and SCHERMER, Bankruptcy Judges.

_____

DREHER, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court[1] denying a motion to vacate an order which denied Debtor, Big Mac Marine, Inc.'s, application to retain William Needler and Associates, Ltd. and William Needler (Needler) as attorney for Debtor, and further denied Needler's application for attorney's fees and expenses. While the facts are somewhat complicated, and made more so by Needler's creation of an at times unclear record, the legal issue is straightforward. The bankruptcy court determined that Needler was disqualified from serving as attorney for Debtor because Needler had been approved to represent the debtors in another pending Chapter 11 case in the District and it therefore denied the application for attorney's fees and expenses. The bankruptcy court was unquestionably correct in so holding and we affirm.

## PROCEDURAL HISTORY

1.      Big Mac Marine, Inc. and Its Bankruptcy Case

Debtor was a family business engaged in selling boats and other marine equipment at retail. When it began operations in the early 1990s it was owned by Edward and Shirley Schmidt (the Schmidts). Its office and showroom were located in Ogallala, Nebraska. Pinnacle Bank of Ogallala, Nebraska (the Bank) lent money to Debtor, which the Schmidts personally guaranteed. In 2000, the Schmidts sold the family business to their son, Greg, but they remained responsible on their personal guarantees. The details of the arrangement for sale between the Schmidts and Greg were not fully developed in the record. At some point, however, the Schmidts claimed to have taken back the stock in the company and become its sole owners.

---

[1]The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

Debtor filed a Chapter 11 petition for bankruptcy relief on April 14, 2003. According to the schedules filed in Debtor's Chapter 11 case, the Schmidts were the largest creditor in the case, holding a noncontingent, undisputed and liquidated secured debt of $596,127.27, secured by Debtor's inventory. The schedules indicated that this debt arose when the Schmidts "paid off" Debtor's loans to the Bank on July 19, 2002. Apparently on this date, and perhaps earlier, the Schmidts had been required to perform on their guarantees to the Bank. As a result of this transaction, they claimed that they became secured creditors of Debtor, but they offered no written documentation to support that contention. In fact, Edward Schmidt testified that there was no documentation to support their claim to a secured status. In spite of this lack of documentation and this admission, the Schmidts persisted in claiming that they held a security interest in most of the assets of the company. The only other secured creditor listed in Schedule D of Debtor's bankruptcy filing was the Bank, which the schedules listed as being owed approximately $370,000 secured by the real estate, a pickup, and certain rental boats.

At the same time that it filed its petition, Debtor filed a proposed Plan of Reorganization in which it proposed to treat the claim of the Schmidts as an allowed secured claim secured by Debtor's inventory which it stated they "owned." The Plan noted that the payments to the Bank made by the Schmidts would be avoided in the Schmidts' Chapter 11 case. The plan also proposed to sell the inventory free and clear of liens and deliver the proceeds to the Schmidts. The Schmidts would be paid over time for any deficiency. In the Plan Debtors also proposed to treat the Bank as a creditor secured only by real estate, a pickup truck and rental boats owned by Debtor. The Plan proposed to pay the claim of the Bank over time in two separate secured classes at 6% and 6½% interest respectively. Unsecured creditors would receive a 10% dividend.

3

2.    The Schmidts' Chapter 11 Case

The Schmidts had their own financial problems. On July 31, 2002, about nine months before Debtor filed, the Schmidts had filed their own Chapter 11 joint bankruptcy petition. In that Chapter 11 case, Needler was approved by the bankruptcy court as debtors' counsel to represent the Schmidts in performing their duties as Chapter 11 debtors. The Bank was the major creditor in the Schmidts' Chapter 11 case. In the Schmidts' Chapter 11 case, the Bank asserted that it was owed approximately $1.6 million and was secured. During the course of the Schmidts' Chapter 11 case the Schmidts challenged the Bank's right to claim any security interest in their property.

3.    Debtor's Attempted Retention of Needler in This Chapter 11 Case

On April 14, 2003, Debtor filed an Application to retain Needler as counsel for the estate pursuant to section 327 of the Bankruptcy Code. In that Application, Debtor stated that to the best of its knowledge this representation did not create a conflict of interest. With the Application, Needler filed a Sworn Declaration in which he stated that he was disinterested and represented no interest adverse to the estate. He did, however, disclose that he represented the Schmidts in their personal Chapter 11 case and that they were the 100% shareholders of Debtor. He further disclosed that the Schmidts were creditors of Debtor, and that they became such as a result of transfers to the Bank which occurred on March 31, 2001, and July 19, 2002. Needler referenced the fact that the Schmidts would seek to reverse those transactions by filing an adversary proceeding in their own case.

Both the United States Trustee and the Bank objected to the retention of Needler as counsel for Debtor. Both asserted that Needler was not disinterested and that he represented interests adverse to the estate. After a hearing, the bankruptcy court issued an order denying the application to employ Needler as counsel for the Debtor.

In its order dated July 10, 2003, the bankruptcy court held that Needler's representation of the Schmidts in their own Chapter 11 disqualified him from representing Debtor in this case. The bankruptcy court noted that the Schmidts were Debtor's sole shareholders, the Bank was a creditor in both cases, and that, given the circumstances, Needler could not represent both sets of debtors without having conflicting allegiances. The resolution of the Bank's claims would need to be addressed in both cases and would place Needler in an inevitable conflict position. The bankruptcy court further cited the fact that Debtor had already filed a Plan which questionably preferred the Schmidts over other creditors. The bankruptcy court further said that "[i]f the Schmidt adversary proceeding against Pinnacle Bank is completed and if the Schmidts withdraw any claims they have in the Big Mac Marine case, then it would appear that Mr. Needler would not have a conflict of interest. Until that time, he is prohibited from representing Big Mac Marine, Inc." Needler appealed the July 10, 2003 order to the District Court which found that it lacked jurisdiction of the appeal because, given the quoted language, the order was not a final one. Big Mac Marine, Inc. v. Jensen, 305 B.R. 309 (D. Neb. 2004). Needler's further appeal to the Eighth Circuit Court of Appeals was dismissed when he failed to timely file his brief or further prosecute the appeal.

Other counsel was retained to represent the Debtor and the case went forward. Eventually, the Schmidts withdrew their claims in the case and a Plan was filed which treated the Schmidts as equity holders and not as creditors. The case later converted, however, after confirmation of that plan was denied. Nevertheless, the adversary proceeding in the Schmidts' Chapter 11 case in which they sought to challenge the validity of the Bank's claims remained pending and is apparently ongoing.

4.    The Order Refusing to Vacate the Order Denying the Application for Retention and Further Denying Fees

On October 29, 2004, Needler filed a motion seeking to have the bankruptcy court vacate its order of July 10, 2003, denying his application to be retained as counsel for Debtor, and he applied for approximately $28,000 in attorneys fees and expenses that had been incurred on Debtor's behalf prior to the July 10, 2003 disqualification order. Again the Bank and the United States Trustee objected, and again, after a hearing on the motion and application, the bankruptcy court issued an order dated December 17, 2004, denying Needler's motion and application. The bankruptcy court held that Needler was disqualified to represent the Debtor because of the conflicts of interest in representing the debtors in the two Chapter 11 cases. The bankruptcy court rejected his argument that the conflict that existed had evaporated when the Plan treating the Schimdts as equity holders only had been filed and they did not object to that treatment at the confirmation hearing, and disagreed that the order should be vacated and his employment authorized as originally requested. Having refused to vacate the prior order, the bankruptcy court went on to deny the application for fees and expenses because Needler had never been approved by court order to represent Debtor.

The appeal in this case is from this December 17, 2004 order. Appellant asserts that the bankruptcy court incorrectly decided that he held an interest adverse to the estate and incorrectly failed to award him his fees under Section 330(a) of the Bankruptcy Code.[2]

---

[2]In his brief appellant also raised a number of other issues. None of these claims were raised before the bankruptcy court and, other than mentioning them, Needler did not argue or provide any support in his briefs for any of them. Accordingly, we will not address those issues. *See* First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 476-77 (8th Cir. 1997)

DECISION

1.    Standard of Review

We review findings of fact for clear error and legal conclusions de novo. Waterman v. Ditto (In re Waterman), 248 B.R. 567, 570 (B.A.P. 8th Cir. 2000).  We review the decision of a bankruptcy court concerning professional employment or fees for abuse of discretion.  Walton v. LaBarge (In re Clark), 223 F. 3rd 859, 862 (8th Cir. 2000).  "An abuse of discretion occurs when the reviewing court  'has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"  Pruss v. Pelofsky (In re Sauer), 222 B.R. 604, 608 (B.A.P. 8th Cir. 1998)(*quoting* United States v. Ortiz, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

2.    Denial of Application For Retention

Section 327(a) provides that:
the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a)(2004).

Section 327(c) provides that:
a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c)(2004).

The burden of proof was on Needler to establish that he was both disinterested and did not represent an interest adverse to the estate. Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.), 23 F.3d 311, 318 (10th Cir. 1994); In re Huntco Inc., 288 B.R. 229, 232 (Bankr. E.D. Mo. 2002).

The bankruptcy court did not abuse its discretion in finding that Appellant was disqualified. At the time he applied to represent Debtor in this case he represented an interest adverse to the estate. While section 327(c) cautions that the mere representation of a creditor in a case is not per se disqualifying, in this case both the United States Trustee and a creditor objected to the retention of Needler on the grounds that he was concurrently representing a creditor, the Schmidts, and that there was an actual conflict of interest. *See* 11 U.S.C. § 327(c)(2004). In this case, the conflict was manifest. At the same time that he proposed to represent this Debtor in this case he was representing the Schmidts who claimed to be the largest creditor in the case. They claimed to be secured but their interest was admittedly undocumented. The Schmidts were also the sole shareholders of Debtor. As their counsel in their Chapter 11, Needler owed a duty to pursue the Schmidts' legitimate claims. But, if employed as counsel for this Chapter 11 Debtor, he would also have an obligation to represent all Debtor's creditors and to objectively analyze the validity of the Schmidts' claims to secured status, or indeed to being a creditor at all. Not only was the conflict actual, it had manifested itself when, on behalf of Debtor, Needler filed a Plan which purported to treat the Schmidts as secured creditors even though their secured status was highly doubtful, thus favoring them over other creditors. On the one hand, Needler was attempting to assert the validity of the Schmidts' purported security interest in Debtor's property, and on the other hand, as Debtor's counsel, he would have been obligated to, or at the very least explain his failure to, object to the Schmidts' claim to secured status. Multiple representation in these two cases was out of the question. *See, e.g.* In re R & R Assoc. of Hampton, 402 F.3d 257, 266 (1st Cir. 2005); Interwest Bus. Equip., 23 F. 3d at 316; In re Wheatfield Business Park, LLC, 286 B.R. 412, 417-18 (Bankr. C.D. Cal. 2002).

8

Needler argues that the quoted language in the bankruptcy court's order of July 10, 2003, required the court to reconsider its prior decision not to allow the retention and to vacate the order once the actual conflict went away. This is simply incorrect. First, the proceeding against the Bank was still ongoing and had not been dismissed at the time the bankruptcy court entered its order. Thus, the qualifications the court set for dissipation of the conflict had not occurred. Second, Appellant misconstrues what the bankruptcy court said. We do not read the quoted language to mean that if the actual conflict dissipated in the future, the bankruptcy court would change its mind about the existence of a conflict during the interim period. Rather, what the bankruptcy court was saying was that, if in the future the Schmidts ceased to be creditors, then the conflict would cease at that point and Needler would not necessarily be disqualified from representing Debtor in the future. The quoted language says nothing about past representation. Indeed, that is apparently exactly how the bankruptcy court construed its own order of July 10, 2003, when it ruled on December 17, 2004. *See* Apex Oil Co., Inc. v. Sparks (In re Apex Oil Co., Inc.), 406 F.3d 538, 542 (8th Cir. 2005)(*citing* In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993))(The bankruptcy court is in the best position to interpret its own orders.).

3.      Denial of Application For Fees and Expenses

Section 330 of the Bankruptcy Code allows the court to award compensation only to professionals "employed under section 327 or 1103." 11 U.S.C. 330(a)(1). No order was ever issued authorizing Needler to be employed to represent the Debtor under section 327 or 1103 of the Bankruptcy Code. *See, e.g.* In re Albrecht, 233 F.3d 1258, 1260-61 (10th Cir. 2000); In re Milwaukee Engraving Co., 219 F.3d 635, 637 (7th Cir. 2000). Thus, Needler was not entitled to attorneys fees or expenses under 11 U.S.C. § 330.

Accordingly, we AFFIRM the bankruptcy court's order of December 17, 2004, denying Needler's motion to vacate the order denying his application for retention under section 327 of the Bankruptcy Code and further denying Needler's application for allowance of fees and expenses under section 330 of the Bankruptcy Code.

_____