**In re POLAROID CORPORATION, et al, Debtors. (includes: Polaroid Holding Company; Polaroid Consumer Electronics, LLC; Polaroid Capital, LLC; Polaroid Latin America I Corporation; Polaroid Asia Pacific LLC; Polaroid International Holding LLC; Polaroid New Bedford Real Estate, LLC; Polaroid Norwood Real Estate, LLC; Polaroid Waltham Real Estate, LLC).**

Nos. 08–46621 (GFK), 08–46620(GFK), 08–46623(GFK), 08–46624(GFK), 08–46625(GFK), 08–46626(GFK), 08–46627(GFK), 08–46628(GFK), 08–46629(GFK).

United States Bankruptcy Court, D. Minnesota.

Jan. 22, 2010.

Michael A. Rosow, Minneapolis, MN, for Resource Group, LLC.

George H. Singer, Minneapolis, MN, for L&V.

James M. Jorissen, for Ritchie Capital Management, LLC.

## ORDER RE: TRUSTEE'S APPLICATION UNDER 11 U.S.C. § 327(e) FOR APPROVAL OF EMPLOYMENT OF LINDQUIST & VENNUM, PLLP, AS SPECIAL COUNSEL

GREGORY F. KISHEL, Bankruptcy Judge.

These Chapter 7 (converted from Chapter 11) cases are before the Court on the application of John R. Stoebner, Trustee, for approval of his employment of Lindquist & Vennum, PLLP ("L & V"), as special counsel for the estate. At the hearing on the application, George H. Singer appeared on behalf of L & V. The Trustee appeared for himself. Ritchie Capital Management, LLC, et al. ("the Ritchie Parties"), appeared by their attorney, James M. Jorissen. Asset Based Resource Group, LLC, identifying itself as successor servicer to Acorn Capital Group, LLC ("Acorn"), appeared by its attorney, Michael A. Rosow. This order addresses the one matter reserved for judicial decision at the end of the hearing.

These related cases were commenced under Chapter 11. As debtors-in-possession under Chapter 11, the Debtors (collectively, "the Polaroid Debtors") were represented by L & V as counsel pursuant to 11 U.S.C. §§ 327(a) and 1107(a). While the cases were pending under Chapter 11, L & V rendered various legal services for the Polaroid Debtors. Two of L & V's undertakings were especially prominent. The first was the successful prosecution of a motion under 11 U.S.C. § 363, toward the sale of most of the Polaroid Debtors' assets free and clear of liens. The second was the commencement of litigation against the Ritchie Parties and Acorn, via separate adversary proceedings in which two of the Polaroid Debtors were named plaintiffs. In the latter, the plaintiffs sought to avoid the defendants' liens against certain assets, and to have their claims subordinated or recharacterized.

The sale free and clear was consummated in May, 2009. Throughout the summer, counsel completed various proceedings ancillary to it. The cases were voluntarily converted to ones under Chapter 7 on August 31, 2009. John R. Stoebner, Esq., was appointed as Trustee.

The Trustee filed applications for approval of his employment of several law firms as counsel. L & V was among them, under an application styled under 11 U.S.C. § 327(e).[1] The United States Trustee filed a consolidated response to all of the applications, raising a number of objections. The United States Trustee was mainly concerned about the applications' lack of clarity in the scope of the proposed retentions, and the possibility of duplication in effort and multiplication of expense, as among the several law firms in question.

The Ritchie Parties and Acorn filed objections specifically directed to the L & V application.

At a hearing, the United States Trustee's objections were resolved consensually by clarifying the several law firms' proposed roles in the Trustee's administration. Ultimately, the Ritchie Parties and Acorn limited their objections to one aspect of the proposed retention of L & V: a continuing representation of the estate in the adversary proceedings against them, which the Trustee intended to carry forward. Stipulated orders were submitted and entered post-hearing, including one approving the Trustee's employment of L

---

1. The application specifically relating to L & V will be termed "the L & V application." In that, the goal of making a court order's diction less cumbersome wins out over the value of facial precision.

& V for several specific functions other than the Ritchie/Acorn adversary proceedings. The narrow, remaining issue was reserved and taken under advisement. It is the subject of this order.

The Ritchie Parties and Acorn make only one basic argument: L & V would have a conflict of interest in representing these bankruptcy estates in the adversary proceedings, given the firm's past and on-going representation of Douglas A. Kelley, Esq.

Kelley has served, and continues to function, as receiver for Thomas J. Petters in proceedings in the United States District Court that are ancillary to the federal criminal case against Petters.[2] He also serves as trustee in the pending, jointly-administered Chapter 11 cases of Petters Group Worldwide, LLC ("PGW," the ultimate parent company of the Polaroid Debtors), Petters Company, Inc. ("PCI"), and several subsidiaries of PCI. L & V has represented Kelley as receiver and trustee throughout the term of his appointments in both capacities, performing services to support the broad performance of his duties. In that capacity, L & V prepared proofs of claim on behalf of several entities and persons over which Kelley has legal authority: PGW, PCI, and PAC Funding, LLC (one of their related debtors in Chapter 11); Tom Petters, in an individual capacity; Thomas Petters, Inc. ("TPI"); and Petters Capital, LLC, another subsidiary of PGW.[3] These proofs of claim were filed in the Polaroid Debtors' cases. A secured status is asserted in some of these proofs of claim.

As the Ritchie Parties and Acorn would have it, these alignments prevent L & V from serving as the Trustee's special counsel on the adversary proceedings against them, due to "current, actual and disabling," "insoluble and inherent" conflicts of interest. Their arguments to identify these alleged conflicts are summarized as follows:

1. L & V has represented and does represent Kelley, in his official capacities. Kelley has asserted claims against the Polaroid Debtors' estates on behalf of PGW, PCI, Petters Capital, Tom Petters, and TPI. The Ritchie Parties and Acorn assert secured claims against the Polaroid Debtors; they maintain that they have liens against the sale proceeds and other assets of the estates of those debtors. In the Ritchie/Acorn adversary proceedings, the Polaroid Debtors' Trustee seeks to have the liens of the Ritchie Parties and Acorn avoided, and any associated unsecured claims disallowed, subordinated, or recharacterized. If L & V were to represent the Trustee for that, the firm would be simultaneously representing competing parties "who claim interests in the same pool of assets," during a time when parallel processes to fix and liquidate all of those claims could be going forward.

2. As litigation against the Ritchie Parties and Acorn goes forward, L & V's professional judgment on the conduct and merits of the litigation would be compromised by the fact that the interests of its other clients-

---

**2.** In the fall of 2008, Tom Petters was charged with the federal offenses of mail fraud, wire fraud, money laundering, and conspiracy. The receivership was judicially imposed after his arrest. On December 2, 2009, he was convicted of 20 felony counts.

**3.** Petters Capital itself was not in bankruptcy at the time. Kelley later filed a petition under Chapter 7 on its behalf. Its case is pending in this court under File No. 09–43847; Randall L. Seaver serves as the trustee in the case.

the various Petters-related bankruptcy estates and the Petters-related entities under receivership-would be enhanced if the Trustee were to prevail in the adversary proceedings. The enhancement would occur when the cash pool and other assets of the Polaroid Debtors' estates were freed of the Ritchie Parties' and Acorn's liens, and their unsecured claims (if any) were disallowed or shunted to a subordinated or equity-shareholding status.

3. Were the Ritchie Parties or Acorn to propose a settlement to the Trustee, L & V's provision of service to the Trustee would again be tainted by conflicted allegiances. This could come about at two possible stages: when its attorneys advised the Trustee on the merits of the settlement proposal when made; and when the proposal was aired for objection before presentation to the Court for approval.

4. If Kelley, as trustee or receiver, were to propose substantive consolidation of the bankruptcy estates of any Petters-related or Polaroid-related debtor-entities, the "[i]ssues regarding substantive consolidation are directly germane to the Adversary Proceedings [against the Ritchie Parties and Acorn], and this also puts L & V into direct conflict position [sic]."

The dispute at bar is only one of many times that the Ritchie Parties and Acorn have attributed conflicts of interest to Kelley or L & V, over the course of the Petters- and Polaroid-related bankruptcy cases. That makes an initial, general observation appropriate. The Ritchie Parties and Acorn never expressly acknowledge the point, but in their broad tenor these contentions are much more structured and informed by the considerations relevant to employment under 11 U.S.C. § 327(a).

That statute governs the engagement of "general counsel" to a bankruptcy estate, i.e., those who "represent or assist the trustee in carrying out the trustee's duties under" the Bankruptcy Code. An attorney proposed for such employment must "not hold or represent an interest adverse to the estate," and must be a "disinterested person." 11 U.S.C. § 327(a). The latter status is defined at 11 U.S.C. § 101(14), as "a person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the [bankruptcy] petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

With its two requirements in the conjunctive, § 101(14)(C) in particular "sets forth very stringent standards that must be met for approval as counsel" under § 327(a). *In re Leisure Dynamics*, 32 B.R. 753, 754 and 757 (Bankr.D.Minn.1983), *aff'd*, 33 B.R. 121 (D.Minn.1983). *See also In re Daig Corp.*, 48 B.R. 121, 132 and n. 7 (Bankr.D.Minn.1985), *aff'd*, 799 F.2d 1251 (8th Cir.1986). This prescription for a "cleaner," "unconnected" status is very much in line with the function of an attorney engaged under § 327(a), who can be instrumental in the discharge of the trustee's general administrative duties and who can have the trustee's ear on all things. A trustee's general counsel will be involved in the review, weighing, and prioritizing of all claims against the estate, *In*

*re Big Mac Marine, Inc.*, 326 B.R. 150, 154–155 (8th Cir. BAP 2005); hence the statutory requirement that such counsel be clear of parties with such claims, in all material ways, for the performance of their relevant duties to the estate.

The Trustee here has already obtained court approval for his employment of Lapp, Libra, Thomson, Stoebner & Pusch, Chartered, as his "general counsel" under § 327(a).[4] The Trustee's continuation of L & V's engagement for the Ritchie/Acorn adversary proceedings would be court-approved under 11 U.S.C. § 327(e), for that "specified special purpose." By its terms, that statute allows the trustee to continue the engagement of

> ... an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

As if to underline the distinction between the roles of "special counsel" under this provision and "general counsel" under § 327(a), § 327(e) excludes the function of "represent[ing] the trustee in conducting the case" from the professional roles that may be performed under its ambit.[5]

The statute identifies three requirements for the approval of special-purpose employment of counsel.

The first is not subject to controversy here; before the conversion of the cases, L & V did represent the two plaintiffs, Polar-oid Corporation and Polaroid Consumer Electronics, LLC, as debtors-in-possession, in commencing the adversary proceedings and by representing the Chapter 11 estates in the first skirmishes in them.

 The second requirement is that the employment be in the best interests of the estate. It is satisfied where the "pursuit of the claim is justified by its merits and value and ... the proposed attorney has expertise and familiarity with the claim." *In re West Pointe Properties, L.P.*, 249 B.R. 273, 284 (Bankr.E.D.Tenn. 2000).

> [Section] 327(e) will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation.

*In re NWFX, Inc.*, 267 B.R. 118, 246 (Bankr.W.D.Ark.2001) (quoting legislative history).

Neither the Ritchie Parties nor Acorn make much of the Trustee's case for this requirement, and it is just as well that they do not. At the very least, the adversary-proceeding complaints plead facts that, if proven, would be a colorable prima facie case for avoidance under the theory of a constructively-fraudulent transfer.[6] The litigation is not facially frivolous. By indications from the record so far, the underlying facts are complex; the application of the governing law will have its

---

4. This engagement was one of those approved after the United States Trustee's concerns were resolved at the hearing. The Ritchie Parties and Acorn did not object to this proposed employment.

5. The unavoidable implication is that representing the trustee "in conducting the case" is covered by § 327(a).

6. I.e., the pledge of valuable assets of the two named debtor-plaintiffs to provide the defendants with security on a preexisting debt owed to them by third parties, for which the debtor-plaintiffs had no obligation, directly or as sureties, all under circumstances and at a time that could meet the statutory requirement of contemporaneous or resultant insolvency.

nuances; and L & V's pre-conversion pursuit of it, involved and zealous as it was, gave its attorneys significant expertise in its subject matter.[7] The second requirement of § 327(e) is met.

This leaves the third requirement, which is framed in terms of a potential conflict of interest on the part of the proposed counsel. It is here that the initial observation in this discussion comes into play.

Like § 327(a), § 327(e) contains a prohibition of conflict of interest on the part of the attorney who would be hired under its authority. Like § 327(a), § 327(e) speaks in terms of "holding" or "representing" an "interest adverse to the estate." But under § 327(e), proposed counsel are disqualified only if their "adverse interest" is *"with respect to the matter on which such attorney is to be employed."* (emphasis added). Section 327(e) has a narrower focus than § 327(a), and imposes fewer restrictions on the proposed attorney. *In re Cockings*, 195 B.R. 735, 737 (Bankr. E.D.Ark.1996). *See also In re Abrass*, 250 B.R. 432, 434–435 (Bankr.M.D.Fla.2000) (comparing §§ 327(a) and 327(e), and terming § 327(e) a "narrow exception to Section 327(a)").

 This narrowing is no accident. It reflects the process-oriented considerations that structure the whole of § 327.

An attorney employed under § 327(e) is truly more of a "hired gun," in the colloquial sense; special counsel is to do the job specified in the retention, i.e., the continuance of a pre-petition engagement to a conclusion on its merits under its governing substantive law. But that perforce limits the advisory capacity of attorneys employed under § 327(e). They counsel the trustee on the strengths and weaknesses of the lawsuit they are prosecuting, if litigation is the subject of their retention, and they propose strategies to put the estate at best advantage for a recovery from it. But, special counsel are not charged with advising the trustee as to the place of the litigation and its potential outcomes in the broader administration of the estate—however much they may receive the trustee's direction in their prosecution, based on the trustee's own evaluation of the litigation's position under his charge. The evaluation of a proposed settlement on its merits is certainly a part of their duties, and they must advise the trustee on those merits based on their evaluation; but they do not speak to the position that the proposal would take in the larger context, the liquidation and distribution of the estate. That is the job of general counsel to the estate, engaged under § 327(a).[8] *Cf. In re Southern Kitch-*

---

7. There is an undercurrent insinuation by both objectors, that there will come a time that the Trustee could conclude that the estates' claims are weak, that significant concessions would be necessary to get anything out of the litigation, and that any attorney representing the estate should have eyes wide-open and focused on this prospect long before it arises. This fillip elides the point right in focus now, that no competent trustee in the United States would decline to pursue these causes of action with great energy, given the authority in this circuit. *See In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir.1997) (under 11 U.S.C. § 548(a)(2), transfers made solely for benefit of third party do not furnish reasonably equivalent value to debtor-transferor;

courts should be skeptical in weighing assertions of indirect, non-economic benefit to debtor allegedly resulting from third-party's receipt).

8. The sorts of legal advice from general counsel that would use special counsel's evaluation *as input* are many: gauging the bases for court approval of the settlement under the local construction of FED. R. BANKR.P. 9019; forecasting the possibility of objections to the settlement from other constituencies and evaluating their potential strengths; doing a larger cost-benefit analysis on settlement (contested or not) versus litigation, and on settlement of the given matter versus the prosecution of other litigation by the bankruptcy estate; and

*ens, Inc.*, 216 B.R. 819, 826 n. 13 (Bankr. D.Minn.1998) ("special purpose" for which counsel is engaged under § 327(e) "must not rise to the level of conducting the bankruptcy case" (citation and interior quotations omitted)).

■ Given all that, it is clear that most of the Ritchie Parties' and Acorn's points are based on the wrong considerations; they do not go to the statutory class of employment that the Trustee proposes for L & V. Section 327(e) recognizes as disqualifying conflicts only those that arise from "the matter on which such attorney is to be employed." In the case of litigation, the statute prevents the retention of counsel who "represent or have represented a client that is an actual or potential opponent of the estate in the dispute for which counsel would be engaged." *In re Southern Kitchens, Inc.*, 216 B.R. at 826.

■ Another provision of the Code creates a further consideration on this point:

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). This provision applies generally to all employment under § 327, so it is relevant here. But, clearly the "actual conflict of interest" that it references must be analyzed in the narrower context of § 327(e). *See Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir.1993).

■ There is nothing of record that L & V has ever represented any of the Ritchie Parties or Acorn on any matter; so, it cannot be tagged with the sort of residual loyalty to a past-and-potentially-future client that such a history would implicate.[9] It certainly has not represented any of them in connection with the subject matter of the adversary proceedings, i.e., the validity, enforceability, or avoidability of their liens against the Polaroid Debtors' assets and the viability of any underlying debt.

So, down to the only consideration relevant under the applicable law, L & V does not have an actual conflict of interest within the meaning of § 327(e), directly arising from the identity of the opposing parties in the two adversary proceedings.

And it is irrelevant under § 327(e) that Kelley has staked out claimants' positions in these cases for the Petters-related entities that are in bankruptcy or under re-

---

projecting and evaluating the propriety and fairness of possible distributions of the estate, assuming the various potential outcomes on necessary legal and administrative actions, including the matter on which special counsel was engaged. Under the precedent governing the approval of settlement of litigation under Rule 9019, the probability of success on the merits under non-bankruptcy law is only one factor for judicial weighing. More to the point here, the "interest of the creditors" of the bankruptcy estate "and a proper deference to their reasonable views in the premises," a factor resonant with the broader values of the bankruptcy process, is the "paramount" consideration. *In re Flight Transp.*

*Corp. Securities Litig.*, 730 F.2d 1128, 1135 (8th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929).

9. *See In re Southern Kitchens, Inc.*, 216 B.R. at 819 (noting jeopardy to estate from representation by special counsel "whose judgment might have been affected by the intangible but persisting loyalty" to past clients who were personally involved in events that gave rise to litigation on which they would represent bankruptcy estate, even though they were not then named parties-defendant).

ceivership, and that L & V handled that, has represented him in his broader capacities as trustee and receiver as general counsel, and will continue to represent him as such. To the extent that a conflict cognizable under § 327(e) is argued from the firm's representation of Kelley, there is none there. To the contrary, in the broader context of the Polaroid Debtors' bankruptcy cases, there is an active coincidence of interests between L & V's client(s) on all the Petters-related cases and proceedings, and their prospective client here, the bankruptcy estates of the relevant Polaroid Debtors.

At present, the "pots" in the Polaroid Debtors' estates are relatively limited in size. Eighty-plus million dollars was generated out of the sale free and clear. Some other tangible and intangible assets have been sold, generating several million dollars. The Trustee hopes to "monetize" several tens of millions of dollars' worth of other assets. The Ritchie Parties and Acorn assert secured claims to the extent of nearly 300 million dollars in underlying debt, each. They both maintain that most or all of the proceeds of liquidation is subject to the replacement liens they were granted to enable the sale free and clear.

On behalf of the various Petters-related entities under his charge, Kelley does have an interest in freeing those assets of the liens of the Ritchie Parties and Acorn— whether the pre-petition liens granted to the several Petters-related entities are sustainable in bankruptcy or not, the avoidance of the liens could enable a distribution to unsecured creditors, including the bankruptcy estates of the Petters-related entities.[10] This coincides with the Trustee's broader fiduciary duty, to see that the Polaroid Debtors' assets are distributed in liquidation only to those who held bona fide, legally-enforceable claims against those entities and their assets. The Trustee believes that he has a basis to challenge the Ritchie Parties' and Acorn's status as such claimants, *with claims against the Polaroid Debtors.* There is nothing of record that he is acting frivolously in going forward on that basis. So, as between the present interests of Kelley as L & V's past and ongoing client, and the interests of the bankruptcy estates in these cases, L & V would have no actual conflict of interest, as contemplated under § 327(c), in pursuing the adversary proceedings-to the hilt if warranted.[11]

The Ritchie Parties and Acorn have not articulated a single bar to L & V's continu-

10. This is, of course, if the original intercompany transactions within Tom Petters's business structures were valid extensions of credit, and involved bona fide transfers of funds. This has not yet been proven or disproven. When Kelley filed the proofs of claim in the Polaroid Debtors' cases, he was performing a place-taking function alone, as was his obligation at the time.

11. It is also appropriate to note one structural expedient that Kelley and the Polaroid Debtors' Trustee have each implemented, to further address concerns regarding conflicts of interest out of the complex net of intercorporate relationships that Tom Petters created. Kelley has employed law firms other than L & V to represent him in his fiduciary capacities, as appropriate in the several court proceed-

ings, when the tangle of those relationships portends conflicting allegiances. He has already called in these "conflicts counsel" for services in a number of matters in this court, in the cases of both the Polaroid Debtors and the Petters-related debtors. Under the other employment orders noted earlier, the Polaroid Debtors' counsel will use attorneys from other law firms, and not those from L & V, when the sustainability of the claims of the Petters-related entities is called into question. The Eighth Circuit has recognized the propriety of using alternate counsel in this way, to avoid situations of conflicted allegiance on the part of attorneys. *Tri–State Financial, LLC v. Lovald,* 525 F.3d 649, 655–656 and n. 5 (8th Cir.2008).

ing employment on the adversary proceedings, under the conflict of interest theory they invoke.[12] The Trustee's presentation for his application meets the statutory requirements for his employment of L & V, to continue representing the estates for this remaining special purpose. The objections of the Ritchie Parties and Acorn are overruled.

IT IS THEREFORE ORDERED:

1. The Trustee's employment of Lindquist & Vennum, PLLP, to represent the bankruptcy estate of Debtor Polaroid Corporation in the continued prosecution of *John R. Stoebner, as Trustee v. Ritchie Capital Management, LLC, et al,* ADV 09–4032, is approved.

2. The Trustee's employment of Lindquist & Vennum, PLLP, to represent the bankruptcy estates of Debtors Polaroid Corporation and Polaroid Consumer Electronics, LLC, in the continued prosecution of *John R. Stoebner, as Trustee v. Acorn Capital Group, LLC,* ADV 09–4031, is approved.

---

**12.** The analysis just made addresses the first three grounds for objection summarized *supra* at pp. 4–5. The fourth ground was articulated solely by the Ritchie Parties. It not only lacked a basis in reality, it was not comprehensible from the language used to frame it. No attorney from L & V has ever broached the possibility of a substantive consolidation of the Polaroid Debtors' estates with those of the Petters-related debtors, at least on the record in any proceeding in any relevant bankruptcy case. On the revelations made on the record to date, it is not possible to conceive of a theory for doing so that would stand up under any of the variant legal tests for this remedy. All of the tests are akin to that for piercing the corporate veil, but are more strongly oriented toward creditors' original understandings, expectations, and rights; and they all impose a heavy burden on the proponent. 2 COLLIER ON BANKRUPTCY ¶ 105.09, especially ¶ 105.09[2][d][iii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). (The only extant local precedent seems to be *In re Giller,* 962 F.2d 796 (8th Cir.1992), which does not use a very lengthy or detailed list of considerations.) And besides, it is just not clear how the relevant considerations are "directly germane" to the issues in suit now, to use the vague verbiage of the Ritchie Parties' objection.